UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY J. FREDERICK; JOHN JUSTIN COLLIER; WILLIAM L. MARKS, JR.; MINNIE LEE CLARK; and COMMON CAUSE INDIANA, <br><br> Plaintiffs, <br><br> -v- <br><br> CONNIE LAWSON, in her official capacity as Secretary of State; ST. JOSEPH COUNTY ELECTION BOARD; and M. CATHERINE FANELLO, RITA L. GLENN, and MURRAY WINN, each in their official and individual capacities as members of the St. Joseph County Election Board, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No. 1:19-cv-1959-SEB-MJD ) ) ) ) ) ) ) ) ) ) ) ) ) |

**AMENDED CLASS ACTION COMPLAINT**

Come now Plaintiffs, by counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure and S.D. Ind. L.R. 7-1(c)(2), hereby amend their Complaint as follows:

**BACKGROUND/NATURE OF THE CASE**

1. Under current Indiana law, a voter who is otherwise qualified to vote is entitled to vote in-person by absentee ballot in the office of the circuit court clerk

1

or at a satellite office established under Indiana Code § 3-11-10-26.3. In addition, a voter who satisfies any of the conditions set forth in IC § 3-11-10-24, including but not limited to being an elderly or disabled voter, a member of the military, a person whose work obligations prevent him from voting while the polls are open, or a public safety officer, is entitled to vote by mail-in absentee ballot.

    2.    Upon receipt of a mail-in absentee ballot, a county election board or absentee voter board in the office of the clerk of the circuit court is required by Indiana law to "immediately examine the signature of the absentee voter to determine its genuineness." IC §§ 3-11-10-4(a), 3-11.5-4-4. This must be done by "compar[ing] the signature as it appears upon the envelope containing the absentee ballot with the signature of the voter as it appears upon the application for the absentee ballot…[or] with any other admittedly genuine signature of the voter." IC § 3-11-10-4(b).

    3.    Under Indiana law effective through July 1, 2019, in a county which did not count absentee ballots at a central location, if a member of the absentee voter board questioned whether a signature on a ballot envelope was genuine, the matter was referred to the county election board for consideration under section 5. IC § 3-11-10-4(d) (repealed effective July 1, 2019, by P.L. 278). If the county election board unanimously found that the signature on a ballot envelope or transmitted affidavit was not genuine, the board was required to write on the

envelope: "The county election board has questioned the genuineness of the signature of this voter." IC § 3-11-10-5. The ballot was then not counted in the final tallies.

    4.    Effective July 1, 2019, the Indiana Legislature, by P.L. 278, has required that all counties count absentee ballots at a central location. It accordingly repealed most of the provisions of IC §§ 3-11-10 which formerly dealt with perceived mismatched signatures with respect to absentee ballots counted in the precincts.

    5.    In St. Joseph County and other counties that count mail-in absentee ballots at a central location, if the absentee ballot counters appointed by the county election board pursuant to IC § 3-11.5-4-22 determine that the signatures on the absentee ballot envelope "do not correspond" with the signature on the application, the ballot "shall be rejected." IC § 3-11.5-4-13(a)(2). If the absentee ballot counters are unable to agree whether or not a voter's signature is genuine, the matter is referred to the county election board. IC § 3-11.5-4-13(e). If the county election board finds that the signature on a ballot envelope or transmitted affidavit is not genuine, the board must write on the envelope the words: "The county election board has rejected this ballot because the signature of this voter is not genuine." IC § 3-11.5-4-4. That ballot is then not included in final election tallies.

6. Though Indiana law, IC § 3-11.5-4-13(f), requires absentee ballot counters or the county election board to issue a certificate to a voter whose ballot has been rejected under this section, this certificate is issued only if the voter appears in person before the election board not later than 5:00 p.m. on election day.

7. However, since Indiana law does not require notice to voters whose signatures are perceived not to match under IC § 3-11.5-4-13(a)(2), the voter is unaware that his absentee ballot has been rejected.

8. Thus, a voter who cast a mail-in absentee ballot has no realistic opportunity to cure the rejection of their absentee ballot.

9. For example, there is no opportunity afforded the voter to validate as genuine the signature on their absentee ballot envelope. The voter is not notified of the rejection, much less given an opportunity to explain why the ballot should not be rejected.

10. A determination by a county election board or a bipartisan team of absentee ballot counters not to count a voter's mail-in absentee ballot is final and unreviewable, and the voter whose absentee ballot is invalidated is not informed that his or her ballot has been rejected.

11. The above-described procedures resulted in several hundred and possibly more than a thousand mail-in absentee ballots submitted in the 2018

general election by Indiana voters not being counted without any notification to the voter or opportunity to cure a perceived signature mismatch.

12. Indiana law contains no standards or criteria absentee ballot counters or members of county election boards are instructed to use in determining whether a signature is "genuine."

13. Indiana and county election boards offer no training to absentee ballot counters or members of county election boards in handwriting analysis.

14. Absentee ballot counters and members of county election boards are not experts in handwriting analysis and cannot make an accurate and reliable determination whether a voter's signature is "genuine."

15. A person's signature may vary for a variety of reasons, including age, physical and mental conditions, disability, medication, stress, accidents, and inherent differences in a person's neuromuscular coordination.

16. Such variations are more prevalent among the elderly, the disabled, or those who speak English as a second language.

17. Indiana's statutory signature-matching requirements violate due process in that the voter is given no written or oral notice that his or her ballot has been rejected due to a signature mismatch, and thus is given no opportunity to challenge the decision to reject their absentee ballot.

18. Indiana's process of determining whether a voter's signature is "genuine" is fraught with error and inconsistent application.

19. Neither Indiana nor county election boards has not promulgated objective and reliable rules or standards for determining whether a voter's signature is "genuine."

20. The lack of standards, together with the unreviewable discretion imparted by Indiana law to absentee ballot counters and members of county election boards, results in significantly different rates between counties of absentee ballots rejected due to perceived signature mismatches.

21. For example, approximately 45 Hamilton County absentee ballots were invalidated due to signature mismatches, 39 in St. Joseph County, 13 in Elkhart County, 13 in Madison County, and zero in Boone, Porter, Bartholomew, Delaware, Floyd, Monroe, and Vanderburgh Counties.

22. The right to vote is fundamental under the United States Constitution.

23. There are already processes in place that provide at least some semblance of due process for other voters whose ballot is questioned.

24. For example, a voter who is unable or unwilling to present proof of identification, or whose provided identification does not qualify under IC § 3-5-2-40.5, must be offered and permitted to cast a provisional ballot, which the voter has ten (10) days to validate. IC §§ 3-11-10-26(l); 3-11.7-5-2.5(a).

25. No due process is available to a voter who submits an absentee ballot by mail that is improperly rejected due to a perceived signature mismatch.

26. It would not be administratively burdensome to notify a voter whose absentee ballot has been rejected due to a perceived signature mismatch and give that voter an opportunity to show cause why the ballot should not be rejected.

## JURISDICTION AND VENUE

27. This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

28. Venue in this Court is proper under 28 U.S.C. § 1391 because Defendant Secretary of State Lawson is located within and conducts official business in this district and division.

29. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

30. Plaintiff Mary J. Frederick is a 69-year old registered voter in St. Joseph County who has lived in the same home for forty (40) years. She submitted an absentee ballot by mail in the November 6, 2018 general election because medical problems, including Parkinson's Disease, limit her mobility. She was never informed by election officials that her ballot was rejected due to a

determination by election officials that her signatures did not match. Because of her Parkinson's, her signature becomes increasingly illegible as the day goes on, although her signature has never been questioned by her bank or anyone else. Had she been notified that her signature was being questioned by election officials and been given an opportunity to do so, she would have validated that the signature on the absentee ballot security envelope containing her absentee ballot was in fact hers.

      31.    Plaintiff John Justin Collier is a registered voter in St. Joseph County who has lived at the same address for fourteen (14) years. Although in the past he had voted in person, his work schedule and commitments were such that he was required to submit an absentee ballot by mail in the November 6, 2018 election. He was never informed by election officials that his ballot was rejected due to a determination by election officials that his signatures did not match. Had he been notified that his signature was being questioned by election officials and given an opportunity, he would have validated that the signature on the absentee ballot security envelope containing his absentee ballot was in fact his.

      32.    Plaintiff William L. Marks, Jr., is a 68-year old registered voter in St. Joseph County and a retired public school teacher who until moving after the last election had lived at the same address since 1983. Although in the past he had voted in person, he voted by mail-in absentee ballot for the first time in the

November 6, 2018 general election. He was never informed by election officials that his absentee ballot was rejected due to a determination that his signature was inauthentic. Had he been notified that his signature was being questioned by election officials and given an opportunity to do so, he would have validated that the signature on the absentee ballot security envelope containing his absentee ballot was in fact his.

33. Plaintiff Minnie Lee Clark is a registered voter in St. Joseph County who lives in a senior living community in South Bend. Although she has long been active in politics, and during her younger years she regularly worked at the polls, at 99 years of age she has become infirm and thus decided to vote by absentee ballot in person before an absentee voter board in the November 6, 2018 election. Even though she signed in front of a traveling absentee voter board, her absentee ballot was rejected because election officials decided that her signatures did not match.

34. Plaintiff Common Cause Indiana has long worked to expand voter registration and equal access to voting. Common Cause Indiana has approximately 13,000 members who live and vote throughout the State of Indiana, many of whom vote, or are statutorily entitled to vote, by mail-in absentee ballot and whose ballot to be cast in future elections is at peril of being rejected by election officials without notice or due process as a result of a perceived signature mismatch.

35. Defendant Connie Lawson is the Indiana Secretary of State and in that capacity is the chief election official of the State, with her primary office in this judicial district. IC § 3-6-3.7-1. She is charged with performing all ministerial duties related to the administration of elections by the state of Indiana. IC § 3-6-4.2-2(a). She is also responsible for enforcing and implementing Indiana's election laws and routinely issues guidance to county election officials in each of Indiana's 92 counties through her appointees to the Indiana Election Division and via the Indiana Election Administrator's Manual, the latest edition of which can be accessed at this link:

https://www.in.gov/sos/elections/files/2019%20Election%20Administrator%27s%20Manual%20Feb%2013%20revision.Final%20edits.pdf  She is sued in her official capacity.

36. Defendants M. Catherine Fanello, Rita L. Glenn, and Murray Winn, are members of the St. Joseph County Election Board, which is comprised of the circuit court clerk and two persons appointed by the circuit court clerk, one from each of the two major political parties. IC § 3-6-5-2. Fanello, Glenn, and Winn are each sued in her or his official and individual capacities.

37. The St. Joseph County Election Board is a county election board duly constituted pursuant to IC § 3-6-5-1.  The St. Joseph County Election Board is sued pursuant to *Monell v. Dep't of Social Services of the City of New York, et al.*,

436 U.S. 658 (1978), for the manner in which it implements the policies, customs or practices at issue in this action; and/or the failure to train absentee ballot counters and/or Election Board Members with respect to determining the genuineness of signatures; and because the Board has a policy or practice of not notifying voters who mail in their absentee ballot that their ballot is suspected of being fraudulent because of a perceived signature mismatch.  (St. Joseph County Election Board and Defendants Fanello, Glenn and Winn are herein collectively referred to as the "County Defendants.")

## DEFENDANT CLASS ACTION ALLEGATIONS

38.     Certifying a defendant class action is unnecessary because an order enjoining the Secretary of State Lawson will have the effect of enjoining all 92 county election boards and their appointees, and the Secretary of State's office routinely issues guidance to county election officials statewide, who follow her office's guidance, and will conform that advice should this Court determine that Indiana's signature matching procedures violate the Fourteenth Amendment.

39.     Nevertheless, to the extent the Court were to deem it necessary to join all the county election boards in all 92 of Indiana's counties, Plaintiffs seek certification of a defendant class of all 92 county election boards, with the St. Joseph County Election Board as the defendant class representative, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) or (b)(3).

40. Joinder would be impracticable because there are 92 county election boards, each of which will share a common set of defenses. Because they are doing what the statutes require as explained to them by Secretary Lawson, and not more, their defenses will not vary based on individual facts. For the same reasons, the defenses of the proposed defendant class representative will be typical of those of the other county election boards. The St. Joseph County Election Board will be an adequate representative of the defendant class.

41. The defendant class should be certified because "prosecuting separate actions by or against individual class members would create a risk of …inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Filing 92 separate, identical lawsuits could result in incompatible standards of conduct throughout Indiana and would be a waste of judicial and governmental resources.

42. The defendant class may also be certified because "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and …a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The questions of law or fact not only predominate, they constitute the only question that are at the center of this lawsuit, which is whether the Indiana

statutes requiring county election officials and their designees to match signatures and invalidate mail-in absentee ballots based on a subjective determination that the voter's signatures do not match, without notification to the voter whose absentee ballot has been rejected, violate the due process and equal protection clauses of the Fourteenth Amendment, both on their face and as applied to the individual Plaintiffs.

## CAUSES OF ACTION

### COUNT I — DENIAL OF DUE PROCESS AGAINST ALL DEFENDANTS

43. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

44. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits the states from depriving "any person of …liberty…without due process of law." This due process principle protects the fundamental right to vote.

45. By mandating the unilateral and unreviewable rejection of mail-in absentee ballots due to an alleged signature mismatch without according pre-rejection notice or an opportunity to be heard and to cure, IC §§ 3-11-10-4, and 3-11.5-4-4 and -13(a)(2), both on their face and as they have been applied to the individual Plaintiffs, violate the Due Process Clause of the Fourteenth Amendment

13

by depriving them and other similarly situated voters of their right to vote without due process of law.

46. Defendant Lawson has not established a procedure for providing pre-rejection notice to an absentee voter whose ballot has been rejected on the grounds his signature was deemed not to be "genuine."

47. County Defendants have taken no steps to affirmatively train absentee ballot counters to make accurate signature comparisons.

48. Despite the fact that a court-appointed recount commission determined that several absentee ballots had been improperly rejected in the May 2018 primary election, the St. Joseph County Election Board made a conscious choice not to provide appropriate training to absentee ballot counters to determine the genuineness of signatures.

49. Signature comparisons made by people who are untrained are known to be highly unreliable and carry a high risk of false negatives.

50. False negatives in signature comparisons were most recently demonstrated in a recount conducted following the primary election in May, 2018, when approximately 15 absentee ballots cast in the Democratic Party primary for Sheriff that had been initially rejected by St. Joseph County election officials due to perceived signature mismatches were subsequently determined by a court-

appointed recount commission to have been improperly rejected and ordered opened and counted.

51. Notice and an opportunity to be heard and to cure are already provided to other voters, such as those voters who are unable or unwilling to present proof of identification, or whose identification does not qualify under IC § 3-5-2-40.5, who must be permitted to cast an absentee ballot which shall be treated as a provisional ballot, and which the voter has 10 days to validate. IC §§ 3-11-10-26(l); 3-11.7-5-2.5(a).

52. It would not be unreasonably burdensome to apply similar procedures to notify mail-in absentee voters whose signatures have been questioned and provide them an opportunity to validate their signature so as to avoid being disenfranchised, such as by granting the opportunity to voters whose ballot is rejected for a purported signature mismatch to cure by attesting in person or by affidavit as to their identity and that they in fact cast the absentee ballot that was rejected.

53. County Defendants have taken no steps to affirmatively provide mail-in absentee voters whose signatures have been questioned with any due process, opportunity to be heard or to cure.

54. Even though it had actual or constructive knowledge that absentee ballot counters it appoints will probably violate voters' constitutional rights, the St.

15

Joseph County Election Board adopted a policy of inaction, and it continues to have a custom or practice of not providing due process to mail-in absentee voters whose signatures have been questioned.

55. Because voting is a fundamental right, the risk that even one person will be disenfranchised because a signature is wrongly determined not to be genuine is too significant for Indiana to justify depriving absentee voters whose ballot is rejected due to a perceived signature mismatch of some form of pre-rejection notice and opportunity to be heard.

56. This challenge is both facial and as applied.

### COUNT II - DENIAL OF EQUAL PROTECTION AGAINST DEFENDANT LAWSON ONLY

57. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

58. The Fourteenth Amendment to the United States Constitution protects the fundamental right to vote. The State may not infringe upon or abridge the right to vote without adequate justification. The greater the magnitude of the infringement, the stronger the State's justification must be.

59. The application of I.C. §§ 3-11-10-4 and 3-11.5-4-4 and -13(a)(2) has disenfranchised the individual Plaintiffs and many other absentee voters who submitted an absentee ballot by mail.

60. Being disenfranchised is a burden that on its face is severe, especially in the absence any due process protections to resolve the perceived signature mismatch.

61. The collective burdens imposed by these laws are severe.

62. The Equal Protection Clause of the Fourteenth Amendment prohibits Defendant Lawson from burdening the exercise of the right to vote by applying facially-neutral laws in an arbitrary or inconsistent manner.

63. Election officials from one county to the next interpret and apply the signature matching statutes arbitrarily and inconsistently.

64. Some, such as in St. Joseph and Hamilton Counties, apply those laws strictly and reject a large number of mail-in absentee ballots based on perceived signature mismatches, while those in other counties apply these laws loosely and forgivingly and reject few if any mail-in absentee ballots due to a perceived signature mismatch.

65. The arbitrary and inconsistent application of these statutes by county election officials has and is likely to continue to disproportionately disenfranchise voters who are elderly, disabled, or of limited economic means.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following:

A) That this Court issue a judgment declaring that I.C. §§ 3-11-10-4; and 3-11.5-4-4 and -13(a)(2) on their face and as applied to the individual Plaintiffs violate the Fourteenth Amendment because they deny notice and an opportunity to be heard after election officials have determined the signature on the envelope containing their absentee ballot not to be "genuine," and because they are enforced arbitrarily and inconsistently from one Indiana county to another;

B) That this Court issue a preliminary and permanent injunction enjoining Defendants and all those acting in concert with them from enforcing these statutes in rejecting absentee ballots based solely on a perceived signature mismatch in future federal elections;

C) That Plaintiffs be awarded money damages from the Defendants who are being sued in their individual capacities and the St. Joseph County Election Board;

D) That Plaintiffs be awarded their attorneys' fees and costs under 42 U.S.C. § 1988;

E) That a jury trial be had on all issues triable to a jury; and

F) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted,

*/s/William R. Groth*
William R. Groth
David T. Vlink
FILLENWARTH DENNERLINE
 GROTH & TOWE, LLC
429 E. Vermont Street, Ste. 200
Indianapolis, IN 46202
Phone: (317) 353-9363
E-mail: WGroth@fdgtlaborlaw.com
 DVlink@fdgtlaborlaw.com

*/s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS
 WOODY & SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN 46204
Phone: (317) 231-1100
msniderman@findlingpark.com