UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY J. FREDERICK; JOHN JUSTIN COLLIER; WILLIAM L. MARKS, JR.; MINNIE LEE CLARK; and COMMON CAUSE INDIANA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: 1:19-cv-01959-SEB-MJD |
| CONNIE LAWSON, in her official capacity as Secretary of State; | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Connie Lawson, in her official capacity as Secretary of State (the "Secretary") is entitled to summary judgment as a matter of law because Plaintiffs have failed to show that Indiana law violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Instead, Plaintiffs demand that this Court impose an unworkable system of notice and administrative review of mail-in absentee voting. The Indiana Legislature has bestowed the responsibility of processing mail-in absentee ballots and ensuring validity on the local county election officials. Therefore, Plaintiffs' claims against the Secretary are insufficient.

## I.      INTRODUCTION

The Secretary has been sued for her position as elected official to preside over elections in the State of Indiana. Plaintiffs allege violations of the Due Process Clause and

the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs claim Indiana law violates the fundamental right to vote on its face and as applied because (1) local county election officials are not required to train on handwriting analysis and (2) voters have no opportunity to cure a rejected absentee ballot based on signatures not matching. The undisputed material facts show that the challenged Indiana laws and mail-in absentee voting system do not violate the U.S. Constitution.

Indiana state law mandates that the members of the county election boards review absentee voter ballots, and reject ballots which the bipartisan group unanimously believes have signatures that do not match up with other genuine signatures. Plaintiffs allege that the county election board rejected their votes by making rulings that the signatures did not match. The Secretary should be granted summary judgment on Plaintiffs' claims. There is no subject-matter jurisdiction due to a lack of lack standing against the Secretary. Also, Plaintiffs fail to state a claim against the Secretary because Plaintiffs do not have a fundamental right to vote absentee and the State's signature verification process is reasonable.

## II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Indiana law dictates the process for absentee voting and the signature verification process. *See generally*, Ind. Code § 3-11-10-1 *et seq.* Under Indiana Code section 3-11-10-36, each county must appoint an absentee voter board comprised of two voters of each political party. These individuals are appointed and trained by the county election board. Ind. Code §§ 3-11-10-36(a), -39. Additional absentee ballot counters are appointed under Indiana Code sections 3-11.5-4-22 and -23.

2

Indiana Code section 3-11-10-4(a) states, "Upon receipt of an absentee ballot, a county election board (or the absentee voter board in the office of the circuit court clerk) shall immediately examine the signature of the absentee voter to determine its genuineness." Indiana law requires the local county election officials to compare signatures on absentee ballot envelopes with absentee ballot applications, or otherwise genuine signature information, in order to determine if the signatures match before accepting such absentee ballots. Ind. Code § 3-11-10-4; *see Indiana Election Administrator's Manual*, Exhibit 1, pp. 116-122.

Some absentee voters may be required to provide additional information when their absentee ballot is mailed out, and, if not provided when the absentee ballot is received, then it is processed as a provisional ballot. Ind. Code § 3-11-10-4.5; *see Indiana Election Administrator's Manual*, Ex. 1, p. 120.

Local county election officials may give some deference to signatures based on the disability of the voter. *See Indiana Election Administrator's Manual*, Ex. 1, p. 116; *see e.g.* Ind. Code § 3-5-6-6. Voters with disabilities have the opportunity to request attestation of their signature by specified individuals or the absentee voter board. Ind. Code §§ 3-11.5-4-13(b)-(c); 3-11-10-24, -25.

If the local county election officials performing the first signature review immediately upon receipt of the absentee ballot unanimously agree that the signature on an absentee ballot envelope does not match the voter's known signature information, then the officials must write that the "board has rejected this ballot because the signature of this voter is not genuine." *See Indiana Election Administrator's Manual*, Ex. 1, p. 117.

Doing the first signature review before Election Day assists in timely processing on Election Day. *Id.* at 116-117. Processing mail-in absentee ballots on Election Day requires that local county election officials who find signatures do not match must still comply with Indiana Code section 3-11.5-4-4, which says the county election board must write on the envelope that the ballot was rejected because the signature is not genuine. If absentee ballots are cast in-person before the absentee board, at the clerk's office, or at a satellite absentee facility, then the county election board may adopt by unanimous resolution that a second signature review is not required. Ind. Code § 3-11.5-4-12(f); *see Indiana Election Administrator's Manual*, Ex. 1, p. 121. If a voter's absentee ballot was rejected and the voter appears in-person before 5 p.m. on Election Day, the local county election officials must issue a certificate to allow the voter to vote. Ind. Code § 3-11.5-4-13(f).

### III.    STANDARD OF REVIEW

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir. 1990). Under this standard, a dispute of fact that is relevant to the moving party's legal position will defeat summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). But, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

4

## IV.    ARGUMENT

**A. The Secretary is entitled to summary judgment as a matter of law because Plaintiffs lack standing.**

Plaintiffs lack standing because they have not suffered an actual or imminent injury and their injuries, if any, are not redressable by the Secretary. Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737 (1984). The Seventh Circuit has characterized standing as "an essential and unchanging part of the case-or-controversy requirement of Article III." *DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005). Specifically, "the elements [that] must [be] show[n] are: (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Id*. Plaintiffs lack standing because they have not suffered any injury that can be redressed by the Secretary.

### 1.    Individual Plaintiffs' injuries are speculative.

Plaintiffs have suffered no injury-in-fact because they have not demonstrated that not having their vote counted in this circumstance rises to the level of constitutional infirmity. "It is undeniable that the right to vote is a fundamental right guaranteed by the Constitution. The right to vote is not just the right to put a ballot in a box but also the right to have one's vote counted." *Shipley v. Chicago Bd. Of Elec. Commr's*, No. 17-3511,

2020 WL 412839 at *1, *4 (7th Cir. Jan. 27, 2020) (internal citations omitted). Yet there is no constitutional right to cast a vote by mail-in absentee ballot. And refusal or failure to count a vote does not always give rise to a claim under section 1983. In *Hennings*, the 7th Circuit explained that "not every election irregularity . . . will give rise to a constitutional claim and an action under 1983" and reasoned that irregularities lacking in invidious or fraudulent intent, such as voting devise malfunction, failure to take steps to diminish the possibility of tampering, and refusal to conduct retabulation, fall short of constitutional infractions. *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975). Discounting a mail-in absentee ballot because of a signature mismatch, even if it were to eliminate a legitimate vote, has the intent to eliminate fraud, not contribute to it. As such, it does not rise to the level of constitutional violation,

The federally-protected right to vote has been held to have been abridged in the following circumstances, among others:

> dilution of votes by reason of malapportioned voting districts or weighted voting systems; purposeful or systematic discrimination against voters of a certain class, geographic area, or political affiliation; election frauds; and other willful conduct which undermines the organic processes by which candidates are elected, Smith v. Cherry, supra, 489 F.2d 1098 [(7th Cir. 1973)] (placing bogus candidate on primary ballot); Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970) (failure to give notice to prospective candidates of new and rigorous standards for ballot placement and denial of access to disqualified petitions).

*Id.* at 864 (internal citations omitted). Requiring that a person's absentee ballot envelope signature match his or her absentee application signature or other genuine signature is not even approximately analogous to any of these infirmities. Absent "invidious or fraudulent intent," which Plaintiffs have not alleged, any votes that were

6

accidentally rejected based on an incorrect signature comparison "fall far short of constitutional infractions" and such "errors and irregularities [in conducting elections] . . . are inevitable, and no constitutional guarantee exists to remedy them." *Hennings*, 523 F.2d at 864-65. This is especially so where Plaintiffs have failed to allege any facts that the uncounted absentee ballots would have changed the outcome of the 2018 general election. *Shipley*, 2020 WL 412839 at *5 (finding no depravation of the right to vote where the challenged statute could not affect election results); *Hennings*, 523 F.2d at 864-65 (noting and upholding District Court's finding that "the election results would not have changed in any race except that of sheriff, and only there if the loser had obtained unlikely percentages.").

Plaintiffs' Complaint speculates that absentee voters are injured by receiving no notice on Election Day that their mail-in absentee ballots were rejected for mismatched signature. This argument assumes that an individual who specifically requests an absentee ballot to participate in an election by some means other than in-person voting would then appear in-person to contest an absentee ballot rejection based on the signature. Yet, the very nature of voting by absentee ballot is that the voter is unwilling or unable to appear in person. Elections are an important foundation of democracy and they are also undoubtedly one of our most time-sensitive matters. But if a voter does not vote in person, using what is still the default voting method, and instead votes absentee, then he or she must utilize the procedure provided, including the signature verification requirement. Indiana's voter ID law, prevents in-person voter fraud while the signature

verification requirement prevents absentee voter fraud. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008).

In sum, Plaintiffs bring no case or controversy to this Court. This is essentially a request from the federal court to advise whether the signature verification requirement is constitutional. Plaintiffs also cannot show that there is an actual or imminent harm. Plaintiffs have not established any discriminatory conduct occurred or will occur as a result of the challenged statutes. *See Hennings*, 523 F.2d at 864-65. Plaintiffs have made no allegation or claim that Defendant has willfully or intentionally attempted to prevent any Indiana voters from casting absentee ballots. Plaintiffs also assume signatures were deemed mismatched or not genuine because the county election board officials were not trained handwriting specialists. Plaintiffs can present no evidence on this claim against the Secretary of State; accordingly, summary judgment should be granted in favor of the Secretary.

     2.   <u>Individual Plaintiffs do not have third party standing.</u>

Plaintiffs similarly lack standing to bring claims on behalf of the public. Plaintiffs do not have third-party standing to assert claims on behalf of all Indiana absentee voters because Plaintiffs have not demonstrated that they meet the elements necessary to assert third-party rights. "Despite the general impediment to advancing someone else's interests, the Supreme Court has held that a person may litigate another's rights in his own cause so long as three criteria are satisfied: (1) the litigant must have suffered an injury in fact; (2) the litigant must have a close relation to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own

interest." *Marion–Garcia v. Holder,* 647 F.3d 666, 670 (7th Cir. 2011) (citing *Powers v. Ohio,* 499 U.S. 400 (1991)). Plaintiffs have not suffered an injury-in-fact, as explained above, nor do Plaintiffs have close relations to all other absentee voters in Indiana. Plaintiffs have also made no attempt to demonstrate that other absentee voters are unable to protect their own interests. The deadline to a certify Plaintiffs' class action in this case has also passed and Plaintiffs failed to file a motion. Meeting none of the elements, Plaintiffs do not have third-party standing to assert challenges on behalf of all Indiana absentee voters.

3. <u>Plaintiff Common Cause does not have organizational standing.</u>

Concerning Plaintiff Common Cause Indiana specifically, it does not possess organizational standing sufficient to state a claim on behalf of itself or its members in this action. The Seventh Circuit recently considered the standing requirements for organizations such as Common Cause. In *Common Cause Indiana v. Lawson*, such organizations must generally demonstrate the same standing requirements as all litigants, namely, injury-in-fact, injury that is fairly traceably to the named defendant's conduct (causation), and redressability. 937 F.3d 944, 949 (7th Cir. 2019). To satisfy injury-in-fact, an organization must allege that a law will "injure an organization . . . 'by compelling [it] to devote resources' to combatting the effects of that law that are harmful to the organization's mission." *Id.* at 950 (quoting *Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007)) (brackets in original). "[T]axpayer standing or speculative injury" alone are insufficient to invoke Article III standing. *Id.* An organization "cannot convert [] ordinary program costs into an injury in fact." *Id.* at 955

9

(quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)) (internal quotation marks omitted). The central inquiry is what *additional* or *new* burdens are created by the law the organization is challenging. *Id.* (citing *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040-41 (9th Cir. 2015)). The organization must demonstrate a real disruption to its operations and that its response is warranted. *Id.* (internal citations omitted). Here, Plaintiff Common Cause Indiana makes no allegations in the Amended Complaint or Plaintiffs' Statement of Claims that Common Cause Indiana's mission will be hurt by the signature verification requirement nor that opposing Indiana Code sections 3-11-10-4 and 3-11.5-4-4 will "compel[] [Common Cause Indiana] to devote resources" towards "combatting" the effects of that law. *See* ECF No. 14; 49. Plaintiff Common Cause Indiana simply makes no claims on these subjects. Common Cause Indiana does not allege that any diversion of its resources to "combat" the signature verification requirement has occurred. Neither does the organization claim that its operations have been disrupted nor that it has been subjected to new and additional burdens as a result of the challenged law. Absent demonstrating "drains on their resources" or that "[b]y adding to their workload, [the challenged law] costs them time and money they would have spent differently or not spent at all," Plaintiff Common Cause Indiana has not shown it is suffering an injury-in-fact as required for organizational standing.  *Common Cause Indiana*, 937 F.3d at 954.

4. The Secretary cannot provide redress for Plaintiffs' claims.

Plaintiffs also lack standing because they cannot demonstrate that the alleged injury is fairly traceable (i.e., caused) by the Secretary or that she can redress Plaintiffs'

alleged injuries. Plaintiffs bear the burden of "establishing standing, and each element, including redressability, must be supported by more than unadorned speculation." *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001). A plaintiff must allege an injury traceable to a defendant's allegedly unlawful conduct, and the conduct must be likely to be redressed by the request relief. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 588 (2007). The Court cannot order the Secretary to take any of these actions because the challenged statute does not vest any such authority in the Secretary, but instead, mail-in absentee signature review is performed by local county election officials. Ind. Code §§ 3-11-10-4, 3-11.5-4-4.[1]

The Secretary does not implement the signature verification process, does not verify signatures, does not implement policies that counties rely on in implementing the signature verification process, and cannot overrule county election officials' rejection of a signature. In short, the Secretary does not and cannot "cause" the alleged injuries to Plaintiffs. If the Secretary does not implement this law, it necessarily follows that this Court can order no meaningful relief in favor of Plaintiffs against the Secretary. This Court cannot order the Secretary to change the way the signature verification process is implemented by local county election officials, cannot order that certain previously-rejected signatures be accepted, and cannot order that signature experts be ordered to review every absentee ballot. If a party against whom relief is sought cannot provide the requested relief to the plaintiff, even if ordered by the Court, then that plaintiff lacks

---

[1] Plaintiffs dismissed the county Defendants in this case.

standing to sue that party. *Common Cause Indiana*, 937 F.3d at 955-56 (holding that Common Cause Indiana *did* have standing to sue the Indiana Secretary of State, in part, because "[a]n injunction against these novel voter removal measures," which were enforced by and through the Secretary,  would redress the Organizations' injury."). Plaintiffs do not have standing to sue the Indiana Secretary of State because the Secretary cannot provide its requested relief, even if ordered by this Court. *Id.*

It remains unclear what injuries any of the Plaintiffs are suffering as a result of actions taken by the Secretary. The Complaint does not explain how the Secretary is responsible for county election officials' signature determinations nor how the Secretary could alter the present enforcement of the signature verification process by local election officials. The majority of the Complaint alleges facts against county election officials only, and not the Secretary. For these reasons, there is no traceability to the Secretary as a named Defendant. *See Hein*, 551 U.S. at 588.

As Plaintiffs' injuries cannot be directly connected to the Secretary, a ruling against the Secretary will not redress the alleged harms. All Plaintiffs thereby lack standing as to the Secretary.

For the reasons addressed, Plaintiffs cannot establish standing in this lawsuit and the Secretary is entitled to judgment as a matter of law.

**B. The Secretary is entitled to summary judgment because Plaintiffs fail to state a claim upon which relief could be granted.**

Indiana law does not violate the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment because there is no fundamental right to vote by mail-in

absentee ballot and the State's signature verification process is rationally related to prevent voter fraud. Plaintiffs claim that their fundamental right to vote is being violated by Indiana law. Ind. Code §§ 3-11-10-4, 3-11.5-4-4 and 3-11.5-4-13(a)(2). Plaintiffs argue that the rejection of mail-in absentee ballots due to alleged signature mismatch without an opportunity to be heard violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. But Plaintiffs' claims fail to meet their burden and Defendant can show that the signature verification process is reasonable. For this reason the Secretary should be granted summary judgment.

1. <u>Plaintiffs do not have a fundamental right to mail-in absentee voting or handwriting analysis.</u>

There is no fundamental right nor do Plaintiffs have a property or liberty interest to vote by mail-in absentee ballot; accordingly the Secretary should be granted summary judgment. The right to vote means the right to cast a ballot in an election, but "[i]t does not follow . . . that the right to vote in any manner and the right to associate for political purpose through the ballot are absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Accordingly, the Seventh Circuit has already held that there is no right to vote absentee and that states may require that ballots be cast on Election Day. *Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th Cir. 2004). There is no denial or dilution of the right to vote by simply requiring that absentee ballot signatures be verified.

Plaintiffs state that notice and opportunity to be heard are provided to other voters, such as those unable to present proof of identification, and argue that it would not be unreasonably burdensome to apply similar procedures to notify mail-in absentee

voters whose signatures have been questioned. [Dkt. 14, ¶ 51-52]. But the former process concerns in-person voting, and the latter mail-in absentee voting. Decreeing a notice requirement for each mail-in absentee ballot that is rejected on the basis of a signature mismatch would radically expand the implicitly established right to vote under the Constitution. What's more–it would amount to "judicial legislating . . . in the name of the Constitution." *Id.* at 1130. The Indiana Legislature has enacted the challenged statutes in the name of voter integrity. Notably, the "striking of the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment in which [the judiciary] should not interfere unless strongly convinced that the legislative judgment is grossly awry." *Id.* at 1131. Far from "grossly awry," the signature verification process under Indiana law is a reasonable measure taken by the Indiana Legislature to prevent voting fraud in mail-in absentee voting. The suggestion that handwriting analysis must also be employed in each county is not a right conferred on Plaintiffs by the U.S. Constitution. And although there may be some inconsistencies between counties, Plaintiffs could not show disparities in enforcement between counties would be further avoided by employing handwriting analysis.

Plaintiffs do not have a fundamental right to cast mail-in absentee ballots or require handwriting experts to verify signatures.

2. The State's signature verification process is rationally related to ensuring mail-in absentee votes are legitimate.

Plaintiffs fail to state a claim upon which relief can be granted because the signature verification process is rationally related to the State's legitimate interest in

verifying absentee ballots. The challenged statutes do not deny or abridge Plaintiffs' fundamental right to vote as discussed above. The State need only demonstrate that there is a rational relationship between the law challenged and some legitimate state interest. *McDonald*, 394 U.S. 802, 809 (1969). Indiana's absentee voting statutes are reasonably drafted to protect against voter fraud and ensure that only valid ballots are counted. The State has a legitimate interest in protecting the integrity of the election process to require that mail-in absentee ballot envelope signatures match the absentee application or other genuine signature. These actions, performed in accordance with the challenged statutes, do not violate the U.S. Constitution.

Again, there is no fundamental right to vote absentee. *Griffin*, 385 F.3d at 1130-31. Absent a fundamental right at stake, "[t]he distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside [...] only if based on reasons totally unrelated to the pursuit of that goal." *McDonald*, 394 U.S. 802, 809 (1969). That is, rational basis applies. Under this deferential review, a State's "statutory classifications will be set aside only if no grounds can be conceived to justify them." *Id.* It takes little imagination to conceive why the signature verification statute exists and why absentee voters are treated slightly different from in-person voters: to prevent absentee voter fraud. Preventing election fraud is a legitimate state interest that has been long recognized by the United States Supreme Court. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 199-200 (1992) (quoting *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989)). If the requirement that in-person voters on Election Day must provide their Indiana ID is constitutional, then the less stringent standard that mail-in

15

absentee voters must have similar signatures on their absentee ballot envelope and absentee application should also be upheld. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008). "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process." *Id.*, 553 U.S. at 196.

Indiana's in-person voter ID statute is inapplicable in the absentee context; ensuring that the absentee ballot envelope signature matches the absentee application signature is the next best process by which to confirm the authenticity of an absentee vote. Because of the lack of an in-person interaction between voting officials and an absentee voter, other safeguards must be used. The Indiana Legislature's requirement that signatures be verified permit local county officials to maintain the integrity of the absentee voting process—a process which the State does not have to offer to begin with. The State may design the absentee voting process with verification checks and balances even if the statutes fail "to cover every evil that might conceivably have been attacked." *McDonald*, 394 U.S. at 809.

3.  <u>Differences in the number of rejections between counties based on signature mismatch is not arbitrary.</u>

Plaintiffs make conclusory allegations that the signature verification requirement is enforced arbitrarily between counties. [Dkt. 14 at 16-17.] But Plaintiffs have not proffered any evidence to suggest that the verification process is, in fact, arbitrarily enforced. Plaintiffs merely allege that counties may have varying rates of mail-in absentee

ballot rejections. This does not prove that some counties enforce the signature verification requirement "loosely and forgivingly" while others enforce it "strictly." [Dkt. 14 at 17.] Rejection of mail-in absentee ballots could have been due to other reasons e.g. failure to provide additional documentation. Ind. Code § 3-11-10-4.5; *see Indiana Election Administrator's Manual*, Ex. 1, p. 120. Also, some counties may have more mail-in absentee voters than others and therefore may have higher rejection rates. It is reasonable that certain counties reject more signatures than others by this logic.

Therefore, Plaintiffs' voting rights are not violated due to the mere existence of a difference in the number of signature rejections between counties.

4.   Plaintiffs cannot establish that they are a protected class.

Plaintiffs have not demonstrated that they are members of a protected class. Plaintiffs are essentially absentee voters that differ from other absentee voters only in that Plaintiffs' signatures were rejected pursuant to Indiana Code sections 3-11-10-4 and 3-11.5-4-4. But an absentee voter whose absentee ballot was rejected due to a signature mismatch is not a class of persons recognized as protected by the Fourteenth Amendment. Indeed, absentee voting itself is not a fundamental right. See *Griffin*, 385 F.3d at 1130-31. And Indiana Code sections 3-11-10-4 and 3-11.5-4-4 do not deny the right to vote in any way—they merely prescribe a method by which absentee ballots are verified.

Indiana's absentee voting process is similar to and should receive the same treatment the United States Supreme Court gave an Illinois absentee voter system that did not permit defendants in pretrial custody from exercising Illinois' absentee process

at all. *McDonald v. Bd. Of Election Comm'rs of Chicago*, 394 U.S. 802, 808-09 (1969). In *McDonald*, the Supreme Court found that Illinois' absentee voting system did not infringe the right to vote because the statute at issue in that case did not implicate any protected classes and there was no right to vote absentee. *Id.* Indeed, "the Illinois statutory scheme has [no] impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots." *Id.* at 808. The Court went on to recognize that "[d]espite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise[.]" *Id.* at 808-09. Thus, if Plaintiffs are not, in fact, prevented from exercising their right to vote then there is no constitutional infirmity. Indiana Code sections 3-11-10-4 and 3-11.5-4-4 do not prevent any class of persons from exercising the right to vote— the statute merely requires signature verification of absentee ballots. Thus, far from arbitrarily singling out Plaintiffs, Indiana Code sections 3-11-10-4 and 3-11.5-4-4 are part of Indiana's overall effort to *increase* access to voting by providing for absentee voting. Indiana has offered this out of legislative concern for those who are unable or unwilling to vote in-person. Plaintiffs are no different than any other voter. Indeed, Plaintiffs are not unlike in-person voters who are not permitted to vote because of a lack of photo ID. *Crawford*, 553 U.S. 181 (affirming the constitutionality of Indiana's voter ID statutes). Plaintiffs are not a suspect class and therefore do not receive heightened protection. *McDonald*, 394 U.S. at 808-09.

18

The Secretary is entitled to summary judgment because Plaintiffs fail to show that they are part of a suspect class under the Equal Protection Clause.

## CONCLUSION

The Secretary is entitled to summary judgment because Plaintiffs do not have standing. In addition, the Secretary is entitled to summary judgment because Plaintiffs fail to state a claim upon which relief can be granted.

Respectfully submitted,

Curtis T. Hill, Jr.
Attorney General of Indiana
Attorney No. 13999-20

By:    Jefferson Garn
Deputy Attorney General
Attorney No. 29921-49

Rebecca McClain
Deputy Attorney General
Attorney No. 34111-49

Aleksandrina Pratt
Deputy Attorney General
Attorney No. 34377-49

Robert Rowlett
Deputy Attorney General
Attorney No. 35350-29

OFFICE OF ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770